# Exhibit 3

1

2                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
3

         ANTHONY JACINO and GLASS STAR   )
4        AMERICA, INC.,                   )
                                          )
5                        Plaintiffs,      )
                                          )
6                vs.                       )
                                           16-CV-01704(BMC)
7                                         )
         ILLINOIS TOOL WORKS, INC., ITW )
8        GLOBAL BRANDS, ITW POLYMERS &   )
         FLUIDS, and PERMATEX INC.,      )
9                                         )
                         Defendants.      )
10       ------------------------------)
         ILLINOIS TOOL WORKS, INC.,      )
11                                        )
                         Counterclaimant, )
12                                        )
                 vs.                      )
13                                        )
                                          )
14       GLASS STAR AMERICA, INC.        )
                                          )
15                       Counterclaimant. )
         ------------------------------)
16

17        ATTORNEYS' EYES ONLY VIDEOTAPED DEPOSITION OF
                       ANTHONY JACINO, SR.
18                   Farmingdale, New York
                    Thursday, March 30, 2017
19

20

21

22

23

24      Reported by: Philip Rizzuti

25      Job No: 121193

Page 2

1

2

3

4                        March 30, 2017

5                        9:56 a.m.

6

7        Deposition of ANTHONY JACINO,

8   SR., held at the offices of TSG

9   Reporting Company, 855 Conklin Street,

10  Farmingdale, New York, pursuant to

11  notice, before Philip Rizzuti, a

12  Notary Public of the State of New York

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2   A P P E A R A N C E S:

 3

 4        INTELLECTULAW

 5        Attorneys for Plaintiffs

 6             25 Little Harbor Road

 7             Mount Sinai, NY 11766

 8        BY:   PANAGIOTA TUFARIELLO, ESQ.

 9

10

11        THOMPSON COBURN

12        Attorneys for Defendants

13             One US Bank Plaza

14             St. Louis, MO 63101

15        BY:   MICHAEL NEPPLE, ESQ.

16

17

18   ALSO PRESENT:

19        MANUEL GARCIA, Videographer

20        ANTHONY JACINO, JR.

21

22

23

24

25
```

1

2          IT IS HEREBY STIPULATED AND AGREED,

3    by and between counsel for the respective

4    parties hereto, that the filing, sealing and

5    certification of the within deposition shall

6    be and the same are hereby waived;

7          IT IS FURTHER STIPULATED AND AGREED

8    that all objections, except as to the form

9    of the question, shall be reserved to the

10   time of the trial;

11         IT IS FURTHER STIPULATED AND AGREED

12   that the within deposition may be signed

13   before any Notary Public with the same force

14   and effect as if signed and sworn to before

15   the Court.

16

17

18

19

20

21

22

23

24

25

Page 5

1    Anthony Jacino Sr. - attorneys' eyes only

2              THE VIDEOGRAPHER:  This is the

3         start of media labeled number 1 of the

4         video recorded deposition of the Anthony

5         Jacino in the matter of Anthony Jacino

6         and Glass Star America Inc. versus

7         Illinois Tool Works Inc., et al., on

8         March 30, 2017 at approximately 9:56 a.m.

9              My name is Manuel Garcia, I am the

10        legal video specialist from TSG Reporting

11        Inc., the court reporter is Phil Rizzuti

12        in association with TSG Reporting.

13             Counsel please introduce yourself.

14             MS. TUFARIELLO:  Good morning my

15        name is Betty Tufariello, I am with

16        IntellectuLaw, The Law Offices of P.B.

17        Tufariello, P.C.  I am here on behalf of

18        the plaintiff Anthony Jacino and Glass

19        Star America Inc., and I represent the

20        witness this morning Anthony Jacino Sr.

21             MR. NEPPLE:  And I am Mike Nepple,

22        I am from the law firm of Thompson Coburn

23        located in St. Louis, I am one of the

24        attorneys representing the ITW

25        defendants.

Page 6

1    Anthony Jacino Sr. - attorneys' eyes only

2              THE VIDEOGRAPHER:  Would the court

3        reporter please swear in the witness.

4    A N T H O N Y   J A C I N O, SR.,  called as a

5          witness, having been duly sworn by a

6          Notary Public, was examined and

7          testified as follows:

8    EXAMINATION BY

9    MR. NEPPLE:

10         Q.    Good morning Mr. Jacino.

11         A.    Good morning.

12         Q.    Have you ever had your deposition

13   taken before?

14         A.    I believe once before.

15         Q.    Can you tell me the background of

16   that?

17         A.    It was a car accident.

18         Q.    Okay.  How long ago was that?

19         A.    Don't remember.

20         Q.    Can you please tell me your full

21   legal name for the record?

22         A.    Anthony Jacino Sr.

23         Q.    What is your home address?

24         A.    16 Brianna Court, East Moriches,

25   New York.

1    Anthony Jacino Sr. - attorneys' eyes only

2         Q.    You founded Glass Star shortly

3    after the breakup of Clear Star?

4         A.    Yes.

5         Q.    Who were the owners of Glass Star?

6         A.    I think I put my children first, I

7    think Anthony I made the president first.  We

8    incorporated Glass Star, I was a -- somehow I

9    came back in, but...

10        Q.    So the initial incorporation of

11   Glass Star was in the names of your children

12   and they were the shareholders, and then at

13   some point later after Glass Star was started

14   you came back in; is that correct?

15        A.    Yes.

16        Q.    Did you come back in at a later

17   date because you had an either formal or

18   informal non-compete agreement with your

19   brother?

20        A.    I don't believe that was the

21   reason.

22        Q.    What was the reason why you jumped

23   back in at a later date and not initially?

24        A.    Well I guess it was in discussion

25   with the accountants and things that were --

Page 57

1      Anthony Jacino Sr. - attorneys' eyes only

2    it was better to do for me to come back in as

3    far as financials, taxes, whatever.  Whatever

4    accountants do to make things run smooth, I

5    came back in, I was a consultant.

6            Q.    For a while?

7            A.    For a while.

8            Q.    When you came back in did you come

9    back in as the majority shareholder?

10           A.    Yes.

11           Q.    Have you always owned the majority

12   of the shares from the time you came back in?

13           A.    Yes.

14           Q.    Was your share percentage 51

15   percent?

16           A.    Thereabouts, 51.

17           Q.    What is your percentage today?

18           A.    I would say 51.

19           Q.    And your son who is sitting at the

20   table here, he owns a share; is that correct?

21           A.    Shares.

22           Q.    Do you know what his share

23   percentage is?

24           A.    Do I know it?

25           Q.    Yes.  Do you know what his share

1   Anthony Jacino Sr. - attorneys' eyes only

2        Q.      When ITW approaches you with a

3   purchase order there is a quantity, a date and

4   a price; correct?

5        A.      Yes.

6        Q.      You can accept that purchase order

7   or you can negotiate for different terms;

8   correct?

9        A.      Yes.

10       Q.      And if you sign that purchase

11   order that is an agreement that you agree to

12   produce that many items by such and such day

13   at a certain price; correct?

14       A.      No.

15               MS. TUFARIELLO:   Objection.

16       Q.      Why not?

17       A.      I didn't sign any purchase order.

18       Q.      Glass Star signed purchase orders;

19   correct?

20       A.      No, Glass Star didn't sign

21   purchase orders.  From ITW?

22       Q.      Correct.

23       A.      No.  How would we sign purchase

24   orders?

25       Q.      Did ITW send purchase orders to

Page 68

1    Anthony Jacino Sr. - attorneys' eyes only

2    you?

3         A.    Send purchase orders to us.

4         Q.    And you accepted them; correct?

5         A.    Yes.

6         Q.    You could decline them; correct?

7         A.    Yes.

8         Q.    Did Glass Star ever decline an ITW

9    purchase order?

10        A.    No.

11        Q.    Who did you ask at ITW to adjust

12   the price in the ITW purchase orders from 2014

13   to present; if you did at all?

14        A.    I did.

15        Q.    Okay?

16        A.    Who?

17        Q.    Yes, sir.

18        A.    Elster.

19        Q.    David Elster?

20        A.    Yes.

21        Q.    Anyone else?

22        A.    No.

23        Q.    Go ahead.

24        A.    The question was who I asked?

25        Q.    Yes, who you asked?

1   Anthony Jacino Sr. - attorneys' eyes only

2        Q.    You understand what the term

3   exclusive means?

4        A.    Yes.

5        Q.    Are you still claiming that you

6   have the exclusive right to use those two

7   copyrights and no one else?

8        A.    I didn't say no one else.

9        Q.    Who else could use those two

10  copyrights?

11       A.    My brother.

12       Q.    Did you ever grant to Glass Star

13  the rights to use those two copyrights?

14       A.    Verbally yes.

15       Q.    How did that, how was that

16  accomplished, did you stand up and say --

17       A.    Yes, I stood up.

18       Q.    You stood up and you said I grant

19  to Glass Star the right to use these two

20  copyrights?

21       A.    Not in those words.

22       Q.    Okay, how was that done sir?

23       A.    This is mine, I held it up.

24       Q.    You held up the complaint?

25       A.    No, not the complaint, I held up

```
 1    Anthony Jacino Sr. - attorneys' eyes only

 2   the patent and the copyright.

 3        Q.    When did you stand up and say that

 4   sir?

 5        A.    I can't remember.

 6        Q.    Who was present when you did this

 7   sir?

 8        A.    I can't remember.

 9        Q.    Was this action documented in the

10   corporate notes or the corporate meeting

11   minutes?

12        A.    Not sure.

13        Q.    Did you ever inform your brother

14   that you had licensed the two copyrights to

15   Glass Star?

16        A.    No.

17        Q.    Did he ever inform you that he had

18   licensed the two copyrights to Blue Star?

19        A.    No.

20        Q.    Did you know that he was using

21   those two copyrights?

22        A.    Yes.

23        Q.    And you have known since he

24   founded Blue Star, or shortly thereafter?

25        A.    I really don't know what he did or
```

1    Anthony Jacino Sr. - attorneys' eyes only

2         Q.    Do you remember any names?

3         A.    No.  I don't remember.

4         Q.    You indicated that you asked that

5    the patent number be on the private label?

6         A.    Which they did.

7         Q.    And they did it; correct?

8         A.    Yes.

9         Q.    Did you ask for the copyright

10   registrations to be on the label?

11        A.    On the label of what?

12        Q.    The same place they put the patent

13   number?

14        A.    No, I was under the belief that I

15   just told them patent number.

16        Q.    Just the patent number?

17        A.    Yes, just the patent number.

18        Q.    Sir I will show you what has

19   marked as Exhibit 8, that is Exhibit C

20   attached to your amended complaint in this

21   matter.  Take a minute to look at that and I

22   will ask you some questions about it.

23             Ready sir; paragraph 1 it

24   identifies four products that Glass Star was

25   going to private label for the ITW entities,

1    Anthony Jacino Sr. - attorneys' eyes only

2   do you see that?

3        A.    Yes.

4        Q.    Paragraph 2 gives ITW exclusive

5   rights to use Glass Star America patents and

6   exclusive distribution rights of the products

7   identified in paragraph 1.  Do you see that?

8        A.    Yes.

9        Q.    And then there is the exception

10  for accounts that you already had; correct?

11       A.    Yes.

12       Q.    Paragraph 3 says in order to

13  maintain that exclusive distribution ITW

14  guarantees orders, a minimum of 15,000 at a

15  time; correct?

16       A.    Yes.

17       Q.    So at that time the agreement in

18  April of 2006 you knew that an order coming in

19  would be 15,000 units at a pop; right?

20       A.    I am not sure that was the case

21  every time they sent a purchase order.  It

22  might have been less.

23       Q.    We can talk about that in a bit,

24  and I will talk about that, but I am saying

25  the contract that was signed in 2006, ITW said

1    Anthony Jacino Sr. - attorneys' eyes only

2    that they would order in 15,000 units a pop;

3    right?

4         A.    Can I explain what that number

5    was?

6         Q.    Sure.

7         A.    That was what the printer required

8    for the plate that was going on the press, you

9    know, we needed, there was a minimum order.

10        Q.    That is why you asked --

11        A.    15,000.

12        Q.    And there is no maximum set in

13   that?

14        A.    No, and there is no minimum

15   because we could have had stuff in stock after

16   they ordered.  If they ordered 10,000 we still

17   had 5,000.

18        Q.    So once you got up to acceptable

19   inventory levels you were fine?

20        A.    Good, okay.

21        Q.    And there is no maximum listed;

22   correct?

23        A.    No.

24        Q.    And ITW gave you an anticipated

25   ordering number, an anticipated forecast of

1      Anthony Jacino Sr. - attorneys' eyes only

2    supply agreement Glass Star's largest customer

3    terminated it's supply agreement with Glass

4    Star.

5                Did I read that accurately?

6         A.    Yes it is read accurately.

7         Q.    Are you referring to Wal-Mart in

8    paragraph 50?

9         A.    Yes.

10        Q.    You did not have a supply

11   agreement with Wal-Mart, you operated on a

12   purchase order basis; isn't that true?

13        A.    Well Anthony was the administrator

14   of the account, the Wal-Mart, and he was the

15   custodian.  I am not sure what the

16   correspondence, whether it was electronic.  So

17   I would have to say I don't know.

18        Q.    You don't know if it is a supply

19   agreement or a purchase order basis?

20        A.    Yes, I don't know.

21        Q.    To your knowledge has Wal-Mart

22   paid for every purchase order submitted to you

23   and where you provided product?

24        A.    To my knowledge yes.

25        Q.    Are there any terms in the

1   Anthony Jacino Sr. - attorneys' eyes only

2   Wal-Mart agreement that Glass Star believes

3   Wal-Mart breached by no longer placing orders

4   for Glass Star products?

5           MS. TUFARIELLO:  Objection.

6       A.    Repeat the question.

7       Q.    Sure.  Are there any terms in the

8   agreement between Glass Star and Wal-Mart,

9   whatever that may be, that you believe

10  Wal-Mart breached by no longer placing

11  purchase orders with Glass Star?

12      A.    No.  There is nothing in an

13  agreement.

14      Q.    Was Wal-Mart pressing Glass Star

15  to catch up on back due deliverables that were

16  due to Wal-Mart?

17      A.    I don't know.

18      Q.    At some point you would agree with

19  me that Glass Star got behind on it's

20  deliverables to Wal-Mart, you would agree with

21  that?

22      A.    No I don't agree.  I didn't know.

23      Q.    You have no knowledge of whether

24  Glass Star was behind on it's deliverables to

25  Wal-Mart?

Page 138

1    Anthony Jacino Sr. - attorneys' eyes only

2        Q.    This is in August of 2015?

3        A.    Yes.

4        Q.    And in it she says quote, hi Tony,

5    at this time the decision has been made to

6    remove the windshield repair kit from the

7    modular.  The in-stock has been far below

8    expectation for too long and we are not

9    recovering.  We will be turning the order

10   books off and the item will be deleted as of

11   the week five modular relay.

12             Did I read that accurately?

13       A.    Yes.

14       Q.    So this is Wal-Mart telling Glass

15   Star in August of 2015 that they will not be

16   reordering any more product; correct?

17       A.    Yes.

18       Q.    And the reason that they gave was

19   that the inventory was below expectation for

20   too long and was not recovering?

21       A.    Yes.

22       Q.    Were you aware of any other

23   Wal-Mart complaints, I know this is the first

24   time it has been brought to your attention my

25   understanding?

Page 221

1    Anthony Jacino Sr. - attorneys' eyes only

2         5:22, this is the conclusion of today's

3         deposition.  March 30, 2017.

4              (Time noted 5:22 p.m.)

5                   _____

6                   ANTHONY JACINO, SR.

7

8    Subscribed and sworn to before me

9    this ____ day of _____, 2017

10

11   _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                C E R T I F I C A T E

3    STATE OF NEW YORK      )

4                          : ss.

5    COUNTY OF NEW YORK     )

6

7               I, Philip Rizzuti, a Notary

8    Public within and for the State of New

9    York, do hereby certify:

10              That ANTHONY JACINO, SR., the

11   witness whose deposition is hereinbefore

12   set forth, was duly sworn by me and that

13   such deposition is a true record of the

14   testimony given by the witness.

15              I further certify that I am not

16   related to any of the parties to this

17   action by blood or marriage, and that I am

18   in no way interested in the outcome of this

19   matter.

20              IN WITNESS WHEREOF, I have

21   hereunto set my hand this 11th day of April,

22   2017.

23              _____

24                   PHILIP RIZZUTI

25