# EXHIBIT H

# CONFIDENTIALITY AGREEMENT

**THIS CONFIDENTIALITY AGREEMENT** (the "Agreement") is made this __19th__ day of __September__, 2014_, between Illinois Tool Works Inc., a Delaware corporation, having offices located at 3600 West Lake Avenue, Glenview, Illinois 60026 ("ITW") and **Blue Star Products Inc.**, a __S__ corporation, having its principal place of business at ____355 Marcus Blvd. - Hauppauge, NY 11788.

WHEREAS, Vendor is interested in supplying current and/or future products or services with regard to windshield and other related automotive repair kits to ITW and ITW is interested in purchasing such Vendor products or services;

WHEREAS, each party hereto may be privy to certain Confidential Information of the other party, which is and must remain the property of such other party; and

WHEREAS, each party is willing to reveal, subject to the other party's agreeing to the terms and conditions contained here, such Confidential Information as may be necessary for ITW to purchase such certain Vendor products or services.

NOW THEREFORE, based on the above mutual considerations, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by ITW and Vendor, ITW and Vendor hereby agree as follows:

1. For purposes of this Agreement "Confidential Information" means any and all confidential, proprietary or non-public information related to the aforementioned purpose, including, but not limited to, various documents, leaflets, manuals, specifications, brochures, reports, diagrams, plans, models, sketches, schematics, photographs, equipment, hardware, software, flowcharts, diskettes, designs, samples, and other data-conveying media of the other party, including, without limitation, information pertaining to current and future products, services, methodologies, processes, algorithms, formulae, inventions, ideas, analyses, compilations, studies, tests, opinions, know-how, financing, marketing, manufacturing, sales, and other commercial and technical data. Confidential Information shall consist of information of the foregoing type furnished by one party ("Provider") to the other party ("Recipient") either in written form, orally or visually.

For purposes of this Agreement, Confidential Information shall not include: (i) information that is or becomes a part of the public domain before disclosure by Provider to Recipient and not as a result of a breach of this Agreement by the Recipient; (ii) information that Recipient receives or has received on a non-confidential basis from a third party who Recipient reasonably believes has a legal right to disclose it; (iii) information that is already known to Recipient prior to disclosure by Provider; (iv) information that is independently developed by Recipient without reference to the Provider's Confidential Information; or (v) information that is required to be disclosed pursuant to a court order or governmental agency or other legally compelled disclosure.

2. Recipient recognizes the proprietary rights of Provider in and to the Confidential Information and agrees to take commercially reasonable precautions to safeguard and treat the Confidential Information as confidential and to take appropriate action by instruction, agreement or notice with Recipient's officers, agents and employees to protect the confidential and proprietary nature of the Confidential Information. At all times the Confidential Information shall be handled at

1

least with the same standard of confidentiality accorded the most sensitive and confidential documents of Recipient of a similar nature, but no less than a reasonable standard of care.

3. Recipient agrees that it will not make use of, either directly or indirectly, any of the Confidential Information that it receives, other than for the purpose for which the Confidential Information has been disclosed, except as otherwise permitted herein.

4. Recipient agrees that it will limit dissemination of Confidential Information to only those employees who have a need to know for purposes of this Agreement. Recipient shall be responsible for ensuring that every employee is aware of the terms of this Agreement and has agreed to be bound by this Agreement. Regardless of the above obligation, Recipient shall be responsible to Provider for any breach of this Agreement by any of Recipient's employees.

5. Recipient agrees not to publish, disseminate, or otherwise disclose in any manner or to any other person or entity any Confidential Information, unless otherwise agreed to in writing by an authorized representative of Provider, except as otherwise permitted herein. Recipient shall also refrain from the unauthorized documentation, duplication and/or reproduction of any and all Confidential Information of Provider through any means, including but not limited to, the use of auditory and/or visual recording, copying or photographic devices of any type, except as reasonably necessary to the purpose hereof. Recipient further agrees not to reverse engineer or disassemble the Confidential Information or use the Confidential Information in any way detrimental to Provider.

6. Recipient agrees not to disclose to any other parties that Recipient and Provider are having discussions with regard to the purposes of this Agreement.

7. Upon written request, Recipient shall destroy or return all Confidential Information and any copies thereof. Notwithstanding the foregoing, any Confidential Information that is stored on routine back-up media solely for the purpose of disaster recovery will be subject to destruction in the ordinary course provided that employees are precluded from accessing such information prior to its destruction in accordance with the foregoing. Any latent data, such as deleted files, and other non-logical data types, such as memory dumps, swap files, temporary files, printer spool files, and metadata that can only be retrieved by computer forensics experts and is generally considered inaccessible without the use of specialized tools and techniques shall be subject to use of commercially reasonable efforts to return or destruction; however, if, after using such commercially reasonable efforts, the failure to return or destroy such information will not be considered a breach of this Agreement, provided that such information remains Confidential Information and is not accessed by any person not having rights to do so.

8. Recipient agrees that its breach of the promises set forth herein may cause irreparable damage to Provider and that in the event of such breach Provider shall have, in addition to any and all remedies of law, the right to seek an injunction, specific performance or other equitable relief to prevent the violation of the abovementioned promises. In the event of any suit or action to enforce the terms of this Agreement, the prevailing party in such suit or action shall be entitled to recover, in addition to its awards fixed by the court, its expenses or costs, including reasonable attorneys' fees.

9. No rights or licenses, expressed or implied, are hereby granted to Recipient under any patents, copyrights, trademarks, trade dress, trade secrets or any other intellectual property of Provider as a result of or related to this Agreement.

10. Any and all claims, questions or disputes regarding the interpretation, performance and enforceability of this Agreement, the rights and remedies of the parties hereunder, and all related actions or counterclaims shall be initiated and prosecuted in the courts of the State of Illinois.

11. The parties agree that this Agreement shall be construed and enforced in accordance with the laws of the State of Illinois, without regard to its conflict of law provisions.

12. Recipient agrees that in the event that it, or any of its designated representatives, is requested or required by due legal process to disclose any Confidential Information, Recipient shall, prior to such disclosure, notify Provider by prompt written notice to the extent legally permissible of the existence, terms and conditions of such request for disclosure of Confidential Information so that Provider may seek a protective order or other appropriate remedy. Recipient also agrees to provide reasonable assistance to Provider at Provider's own expense in order for Provider to seek protection of its Confidential Information

13. The term of this Agreement shall be for a period of two (2) years from the date set forth above, after which it shall have no further force or effect.

14. Title to all documents and materials (both originals and copies) that contain any of the Confidential Information disclosed by Provider is hereby acknowledged to be vested in Provider. Recipient agrees to maintain all such documents and materials free from any legal or equitable claims of title or other encumbrance by it or any third party.

15. In the event any provision contained in this Agreement shall be held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, the remaining provisions shall remain in full force and effect and their validity, legality and enforceability shall not in any way be affected or impaired thereby.

**IN WITNESS WHEREOF**, each of the undersigned represents that he/she is a duly authorized representative of his/her party with authority to bind such party with respect to the terms and conditions stated herein and hereby executes this Agreement effective on the date first set forth above.

| **Illinois Tool Works Inc.** | **Blue Star Products Inc.** |
|---|---|
| *[signature]* | *[signature]* |
| Name | Name |
| Supply Chain Director | PRESIDENT |
| Title | Title |
| 9/22/2014 | 9/22/14 |
| Date | Date |

3

JAC000521

JTW SIGNED AGREEMENT

SuperTab.
90% Larger Label Area
BMEAD
KEEPING YOU ORGANIZED
No. 10301

JAC000522

JAC000523