```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
ANTHONY JACINO and GLASS STAR                               :
AMERICA, INC.,                                              :
                                                            :   **MEMORANDUM DECISION &**
                    Plaintiffs,                             :   **ORDER**
                                                            :
                  - against -                               :   16 Civ. 1704 (BMC)
                                                            :
ILLINOIS TOOL WORKS INC.; ITW                               :
GLOBAL BRANDS; ITW POLYMERS &                               :
FLUIDS; and PERMATEX INC.,                                  :
                                                            :
                    Defendants.                             :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Before me is defendants' motion for partial summary judgment. Of the six claims in plaintiffs' amended complaint, only the following three remain:[1] (1) claim one, copyright infringement as to two copyrights; (2) claim two, unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and (3) claim four, unfair competition under New York law. Each of the three claims is brought on behalf of both Anthony Jacino and Glass Star America, Inc. ("Glass Star"). The two copyrights asserted in this action are Copyright Registration Nos. TX 4-945-858 (the "'858 Copyright") and TX 4-910-938 (the "'938 Copyright). Plaintiff Jacino and non-party Gerald Jacino are co-owners of both the '858 Copyright and the '938 Copyright. Plaintiff Jacino established Glass Star and has granted it the right to use the two copyrights.

Defendants' partial summary judgment motion seeks: (1) dismissal of Glass Star's claim for copyright infringement for lack of standing; (2) to limit plaintiff Jacino's potential recovery on the copyright infringement claim to 50% of the amount of statutory damages that would be

---

[1] Plaintiffs have agreed to voluntarily dismiss claims three, five, six, and seven.

awarded because Gerald Jacino, the co-owner of the copyrights, has not joined in this action; (3) to limit consideration of the '938 Copyright on plaintiff Jacino's infringement claim to only the original material because the '938 Copyright is a derivative work that encompasses elements of another copyrighted work that plaintiffs have not asserted in this case; and (4) dismissal of plaintiffs' federal and state unfair competition claims as preempted by the Copyright Act.

With one exception, plaintiffs' arguments in opposition are without merit and defendant's motion is therefore granted in part and denied in part.

### I. Glass Star's Copyright Infringement Claim

Defendants argue that Glass Star does not have standing to assert a copyright infringement claim against them because Glass Star is neither the owner nor the exclusive licensee of either of the two copyrights asserted in this action. It is undisputed that plaintiff Anthony Jacino and non-party Gerald Jacino each hold 50% ownership interest in both the '858 Copyright and the '938 Copyright, and that plaintiff Jacino's company, Glass Star, and Gerald Jacino's company, Blue Star, both have permission to use the copyrights. Because both Glass Star and Blue Star have permission to use the subject copyrights, Glass Star cannot be an exclusive licensee, and therefore, defendants contend, it cannot assert a claim for copyright infringement.

Plaintiffs, seemingly conceding that Glass Star is not an exclusive licensee,[2] claim that although Glass Star does own legal title to the copyrights, it has standing to sue for infringement because it is an "equitable owner" of the copyrights. According to plaintiffs, Glass Star is an

---

[2] In their responsive Rule 56.1 statement, plaintiffs imply that Glass Star is an exclusive licensee of the two subject copyrights by stating that plaintiff Jacino had "constructive permission" from Gerald Jacino "to grant Glass Star an exclusive right to the Copyright Registrations." Plaintiffs appear to have abandoned this claim in their memorandum in opposition, as they do not contend that Glass Star has standing to assert a copyright infringement claim as an exclusive licensee. To the extent plaintiffs are alleging that Glass Star is an exclusive licensee, that is legally impossible in light of plaintiffs' admissions that both Glass Star and Blue Star were given permission to use the copyrights, and that both companies still exist and sell products that are covered by the copyrights.

equitable owner because it has a "trust relationship" with plaintiff Jacino pursuant to which Glass Star exploits the copyrights for the benefit of plaintiff Jacino and his family. Plaintiffs have not identified any evidence to support this conclusory assertion, but even if they had, I would still reject their theory that Glass Star has standing as an equitable owner.[3]

Although they did not include this fact in their responsive Rule 56.1 statement, plaintiffs argue that it is evident that Glass Star and Anthony Jacino have a trust relationship because Glass Star is the only entity to which Anthony Jacino has granted a non-exclusive license. But that does not place Glass Star in a different position than any other non-exclusive licensee, and it is well established that non-exclusive licensees do not have standing to sue for infringement. See Eden Toys, Inc. v. Florelee Undergarment Co., Inc., 697 F.2d 27, 32 (2d Cir. 1982) ("The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights."); John Wiley & Sons, Inc. v. DRK Photo, 998 F. Supp. 2d 262, 277 (S.D.N.Y. 2014) ("[A] nonexclusive 'license conveys no ownership interest, and the holder of a nonexclusive license may not sue others for infringement.'" quoting Davis v. Blige, 505 F.3d 90,100 (2d Cir. 2007)); see also 6 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.02 ("Under the Copyright Act of 1976 . . . only parties with ownership rights in a copyright have standing to bring claims for its infringement. Thus, a nonexclusive licensee has no more standing to sue at present than was the case under the 1909 Act."). The unsupported assertions in plaintiffs' memorandum in opposition are insufficient to raise a genuine factual dispute as to whether Glass Star and plaintiff Jacino have a "trust relationship."

Moreover, the two cases on which plaintiffs rely, Manning v. Miller Music Corp., 174 F.

---

[3] Plaintiffs claim that "Doc 50., pg. 7" supports that Glass Star and plaintiff Jacino have a "trust relationship", but none of the exhibits attached to the Tufariello declaration submitted in support of plaintiffs' memorandum are labeled "Doc 50."

Supp. 192 (S.D.N.Y. 1959), and Pye v. Mitchell, 574 F.2d 476 (9th Cir. 1978), are inapposite. In both of these cases, the plaintiff's status as an author of the copyrighted work who originally possessed an ownership interest in the work was determinative to finding equitable ownership sufficient to confer standing for infringement. Glass Star is not the author of the copyrighted works nor has it ever possessed an ownership interest in the copyrights. Thus, even if plaintiffs could show that Glass Star and plaintiff Jacino have a "trust relationship," I would still not find that Glass Star is an equitable owner with standing to sue for infringement. Accordingly, Glass Star's infringement claim is dismissed.

**II. Plaintiff Jacino's Entitlement to Statutory Damages on the Copyright Infringement Claim**

Plaintiff Jacino is only seeking statutory damages, as opposed to actual damages, on his copyright infringement claim. Defendants argue that if Jacino prevails on his infringement claim, he should be limited to recovering only 50% of the total amount of statutory damages in proportion to his percentage of ownership interest in the two subject copyrights. Plaintiffs contend that plaintiff Jacino should be permitted to recover 100% of the statutory damages because if Gerald Jacino decides that he wants to recover his share, he may pursue a claim against plaintiff Jacino. I agree with defendants that plaintiff Jacino is only permitted to recover his share of any potential damages.

Over seventy years ago, the Second Circuit in Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 140 F.2d 268, 270 (2d Cir. 1944), established that one co-owner of a copyright may sue for infringement without joining the other co-owners in the action, but the co-owner's "recovery shall be confined to the plaintiff's own part," meaning the plaintiff's own actual damages or his "proper share of statutory damages." The Court reaffirmed this holding in Davis v. Blige, 505 F.3d 90, 98, 102-03 (2d Cir. 2007), explaining that because co-owners of a

4

copyright are treated as tenants in common, one co-owner cannot extinguish the interests of other co-owners not parties to the infringement action. Accord Manno v. Tennessee Prod. Ctr., Inc., 657 F. Supp. 2d 425, 432 (S.D.N.Y. 2009) (limiting one co-owner's statutory damages to 50% because the other co-owner did not join in the infringement action); Calloway v. Marvel Entm't Grp., No. 82 Civ. 8697, 1983 WL 1152, at *4 (S.D.N.Y. Dec. 23, 1983) (explaining that if the plaintiff was found to be a co-owner of the copyright, he could not maintain an action for his co-owner's share of damages for copyright infringement).

Plaintiffs argue that this well-settled principle should not be applied in this case because co-owner Gerald Jacino testified at his deposition that he has no financial interest in this litigation and that "no matter what happens with this litigation [he is] not going to make one more dollar." Therefore, plaintiffs claim, plaintiff Jacino should able to recover 100% of damages as there is little risk that defendants will be exposed to double liability or subject to inconsistent obligations. Plaintiffs also argue that if defendants' liability is limited in this case, defendants will be unjustly enriched. Neither of these arguments are persuasive.

First, that non-party Gerald Jacino has no financial interest in this litigation is irrelevant. Of course Gerald Jacino has no financial stake in this litigation; he is not a party. What matters is that Gerald Jacino has not disclaimed any rights that he has to recover his share of statutory damages if he commences a separate lawsuit for infringement against defendants. Moreover, even if one broadly read Gerald Jacino's deposition as indicating a present intent not to pursue defendants, that testimony is far from a legally binding release. He is perfectly free to change his mind at any time. Because plaintiff Jacino cannot extinguish Gerald Jacino's rights as a co-owner of the copyrights, if plaintiff Jacino were allowed to recover 100% of statutory damages in this case, defendants could be subject to multiple liability in the event that Gerald Jacino decides

5

to pursue his own infringement claim.  Second, limiting plaintiff Jacino's damages based on his ownership interest will not unjustly enrich defendants.  To the contrary, it is plaintiff Jacino who would be unjustly enriched if he were permitted to recover a greater amount of damages than that to which he is entitled.  I will thus limit plaintiff Jacino's statutory damages to his 50% share if he prevails on the copyright claim.

**III.  Infringement of the '938 Copyright**

As a third basis for limiting the copyright infringement claim, defendants request that the Court narrow the scope of the protected material in the '938 Copyright because it is a derivative work of material registered under Copyright Registration No. TX 4-910-936 (the "'936 Copyright"), which is also jointly owned by plaintiff Jacino and Gerald Jacino.  Because plaintiffs did not assert the '936 Copyright in this action, defendants argue that any material from the '936 Copyright incorporated into the '938 Copyright should not be considered when evaluating defendants' alleged infringement of the '938 Copyright.  Plaintiffs have failed to respond to this argument.

A derivative work is a one that is "based upon one or more preexisting works" and "recast[s], transform[s], or adapt[s]" the original work.  17 U.S.C. § 101.  A derivative work consists of "editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship . . . . "  Id.  Because a derivative work necessarily contains elements of an underlying work, "the copyright in the derivative work extends only to those elements *original to the derivative work*."  Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 210 F. Supp. 2d 147, 158 (E.D.N.Y. 2002) (emphasis in original); see also Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 909 (2d Cir. 1980) ("[T]he scope of protection afforded to a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting

material. Thus the only aspects of [derivative works] entitled to copyright protection are the non-trivial, original features, if any, contributed by the author or creator of [the derivative work].").

Defendants have submitted the Copyright Registration for both the '936 Copyright, titled the "Clear Star Winshield[sic] Saver II – Stock #777 Blister Card," and the '938 Copyright, titled "Clear Star Windshield Saver II Brochure." It is clear that Windshield Saver II Brochure, the subject of the '938 Copyright, incorporates the exact material that comprises the Stock #777 Blister Card, the subject of the '936, within its larger work.[4]

The '938 Copyright is therefore a derivative work and its protection only extends to original material in the work, not the "Clear Star Windshield Saver II – Stock #777 Blister Card," which is protected by the '936 Copyright. Because plaintiffs have not asserted that the '936 Copyright has been infringed, the "Clear Star Winshield[sic] Saver II – Stock #777 Blister Card," may not be considered when evaluating defendants' alleged infringement of the '938 Copyright.

## IV. Plaintiffs' Federal and State Unfair Competition Claims

Plaintiffs have asserted a claim for unfair competition and false designation of origin under the Lanham Act and a claim for unfair competition under New York law. Defendants argue that both the federal and state claims are preempted by the Copyright Act because they are based on the same alleged conduct that constitutes the copyright infringement claim – defendants are selling repair kits with packaging and inserts substantially similar, if not identical, to the works embodied in the copyrights owned by plaintiff Jacino. I agree with defendants that the Copyright Act preempts plaintiffs' state law claim, but it does not preempt plaintiffs' Lanham

---

[4] For demonstrative purposes, pictures of the '936 Copyrighted work and the '938 Copyrighted work are included in the Appendix to this Order.

7

Act claim.

The following facts are relevant to plaintiffs' unfair competition claims. In 2006, Glass Star and defendant Illinois Tool Works, Inc. ("Illinois Tool Works"), entered into an agreement pursuant to which Glass Star manufactured various products for Illinois Tool Works, including windshield repair kits. At least some of the material in the windshield repair kits that Glass Star produced was protected by the '936 and '938 Copyrights. On the packaging of the windshield repair kit produced for Illinois Tool Works, Glass Star displayed the patent number of a patent entitled "Glass Break Repair Kit Apparatus and Method," which is jointly owned by plaintiff Jacino and Gerald Jacino. Plaintiffs have not identified any other markings that were included on the repair kits made for Illinois Tool Works that indicated that either Glass Star or plaintiff Jacino were involved in the production of the product.

Glass Star continued to make repair kits for Illinois Tool Works until 2015, when Illinois Tool Works terminated the agreement and informed Glass Star that it was no longer going to purchase its repair kits. Plaintiffs allege that since the termination of the agreement, defendants have continued to sell windshield repair kids with packaging and inserts identical to the packaging and inserts that Glass Star produced for Illinois Tool Works.

### A. Lanham Act Claim

Plaintiffs' false designation of origin of goods claim under the Lanham Act is based on their allegation that defendants' use of packaging and inserts identical to the packaging and inserts used while Glass Star was manufacturing defendants' repair kits creates the false impression that defendants' products are still being made by Glass Star and approved by plaintiff Jacino. Section 43 of the Lanham Act, 11 U.S.C. § 1125(a)(1)(A), creates a cause of action against an entity that makes a "false designation of origin, false or misleading description of fact,

or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to the origin" of its goods. See also Lipton v. The Nature Co., 71 F.3d 464, 472 (2d Cir. 1995) (Section 43 "prohibits any misrepresentation likely to cause confusion as to the source or the manufacturer of a product.").

Defendants argue that the Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), precludes plaintiffs' false designation of origin claim because they are trying to use the Lanham Act to add another layer of protection to their copyrighted works. In Dastar, the plaintiff brought a reverse passing off claim under the Lanham Act, alleging that the defendant distributed videos which included footage from a television series without properly attributing the television series as the origin of the video footage. The Court held that the plaintiff could not state a Lanham Act claim because the author or creator of ideas that are reproduced in tangible products or goods, such as a film, is not the "origin[ator] of goods" within the meaning of Section 43 of the Lanham Act. Id. at 27. Therefore, "the author of an idea "may not claim that the producer of the tangible product, by reproducing the author's idea without proper attribution, has committed an actionable 'false designation of origin.'" Fioranelli v. CBS Broad. Inc., 232 F. Supp. 3d 531, 541 (S.D.N.Y. 2017). Plaintiffs respond that Dastar is not applicable here because plaintiffs are not suing defendants for reproducing their ideas without attribution.

I agree with plaintiffs that Dastar does not preclude plaintiffs' Lanham Act claim. Plaintiffs are not claiming that defendants failed to attribute their windshield repair kit packaging and inserts to ideas created by Glass Star. They are alleging that by selling repair kits that contain substantially similar packaging and inserts as those previously made by Glass Star, defendants have created a false designation that their products are still being produced by Glass

Star or approved by plaintiff Jacino.

Although plaintiffs' Lanham Act claim is not precluded, and therefore survives defendants' motion for summary judgment, I am skeptical that plaintiffs can prevail on this claim. To prove a false designation of origin claim, a plaintiff must demonstrate that there is a likelihood of confusion between the plaintiff's good and the defendant's. Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P., 380 F.3d 126, 131 (2d Cir. 2004). "The Second Circuit has defined a 'likelihood of consumer confusion' to be a 'likelihood that an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed confused, as to the source of the goods in question.'" Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC, 601 F. Supp. 2d 556, 563 (S.D.N.Y. 2009) (alteration in original) (quoting Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 47 (2d Cir. 1978)).

It seems unlikely that plaintiffs will be able to show that there was a likelihood of consumer confusion. Plaintiffs admit that defendants' current repair kits do not contain any Glass Star trademark, and they do not allege that the repair kits made by Glass Star even contained its trademark. Significantly, there is nothing to suggest that even prior to the termination of the parties' agreement, customers were aware that Glass Star was producing Illinois Toil Works' repair kits. The only aspect of the repair kits that showed that Glass Star produced them for Illinois Tool Works was a reference to a patent number owned by plaintiff Jacino and Gerald Jacino on the packaging. But the patent number was not accompanied by a statement listing the owner of the patent or even the title of the patented work.

It seems unreasonable to think that customers associated Illinois Toil Works' repair kits with Glass Star or plaintiff Jacino based on the listing of an obscure patent number on the bottom of the packaging. And if consumers could not reasonably associate Glass Star or Anthony Jacino

10

with defendants' products even when Glass Star was manufacturing them, there is little likelihood that plaintiffs will be able to prove that customers are confused as to whether defendants' current repair kits are still being produced by Glass Star or approved by plaintiff Jacino. Nonetheless, because defendants' only pursued the dismissal of this claim on the basis that it is precluded, which it is not, plaintiffs' Lanham Act claim may proceed.

### B. New York Unfair Competition Claim

Plaintiffs' unfair competition claim under New York law rests on the same theory as their Lanham Act claim. "The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995) (internal alterations and quotation marks omitted). To prevail on an unfair competition claim, the plaintiff "must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief." Id. Defendants argue that plaintiffs' New York unfair competition claim is preempted because the harm alleged falls within the protection of the Copyright Act.

Pursuant to Section 301(a) of the Copyright Act, federal copyright law will preempt a state law claim when: (1) the subject matter of the work upon which the state claims are premised falls within the subject matter protected by the Copyright Act; and (2) the rights that are asserted under the state law are equivalent to those protected by the Copyright Act. See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2005); Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc., No. 06CV2083, 2006 WL 3500702, at *11 (S.D.N.Y. Dec. 4, 2006) (internal quotations and citations omitted). The first requirement is satisfied "if the claim applies to a work of authorship fixed in a tangible medium of expression

and falling within the ambit of one of the categories of copyrightable works." Briarpatch Ltd., 373 F.3d at 305. Here, this element is satisfied because plaintiffs' repair kit inserts and packaging are copyrightable as written and photographic works. 17 U.S.C. § 102(a)(1), (5).

At the second step, the Second Circuit employs the "extra element" test to determine whether a state law claim seeks to protect rights equivalent to those protected under the Copyright Act. The extra element test provides that if an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption." Comput. Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992). The extra element must also change the nature of the action "so that it is qualitatively different from a copyright infringement claim." Mayer v. Josiah Wedgewood & Sons, Ltd., 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985).

Plaintiffs have not even attempted to identify an "extra element," nor is there any. Their New York unfair competition claim is therefore preempted by the Copyright Act. See, e.g., Woolcott v. Baratta, No. 13-CV-2964, 2014 WL 1814130, at *10 (E.D.N.Y. May 7, 2014) (holding that the plaintiff's common law unfair competition claim based on allegations that the defendant used the plaintiff's intellectual property to create an unfair advantage was preempted by federal copyright law); Eyal R.D. Corp. v. Jewelex New York Ltd., 784 F. Supp. 2d 441, 447 (E.D.N.Y. 2011) (holding that the plaintiff's common law unfair competition claim based on conclusory allegations that the defendant's alleged copying caused a likelihood of confusion was preempted); see also Comput. Assocs. Int'l, Inc., 982 F.2d at 717 ("[W]e have held that unfair and competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by [the Copyright Act].").

## CONCLUSION

Defendants' motion for partial summary judgment is granted in part and denied in part. Glass Star's copyright infringement claim and plaintiffs' New York unfair competition claim are dismissed. The only claims that may proceed is Anthony Jacino's claim for copyright infringement and plaintiffs' Lanham Act claim.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      October 6, 2017

**Appendix**



**The '936 Copyright: "Clear Star Windshield Saver II – Stock #777 Blister Card"**



**The '938 Copyright: "Clear Star Windsheild Saver II Brochure"**